IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| FAULALO F. TUPUA, | ) | CV. NO. 08-00350  DAE/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII, | ) | |
| DEPARTMENT OF HEALTH; | ) | |
| JOHN DOES 1-10; DOE ENTITIES | ) | |
| 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

On June 1, 2009, the Court heard Defendant's Motion.  (Doc. # 26.)

Venitia K. Carpenter-Asui, Esq., appeared at the hearing on behalf of Plaintiff;

James E. Halvorson, Deputy Attorney General, appeared at the hearing on behalf

of Defendant.  After reviewing the motion and the supporting and opposing

memoranda, the Court GRANTS Defendant's Motion.

BACKGROUND

Plaintiff was born in America Samoa and his first language is

Samoan.  Plaintiff came to the United States to attend college and received a

bachelor's degree in microbiology.  Plaintiff became a naturalized United States citizen in 1989.

Defendant is the State Laboratories Division of the Department of Health.  Plaintiff was hired by Defendant in 1988 as a microbiologist.  Plaintiff's job duties included processing incoming specimens, cultivating bacterial organisms, record keeping, handling infectious material, analyzing specimens related to food poisoning caused by salmonella bacteria, and other such duties. Norman O'Connor was Plaintiff's immediate supervisor during the period in question in this lawsuit.  Plaintiff contends that he was the only Samoan person employed in the Bacteriology/Parasitology section and that O'Connor is Caucasian.  Plaintiff contends that O'Connor subjected him to disparate treatment through various actions that occurred starting in November 2001.

On March 29, 2007, Plaintiff submitted an incident report to his employer stating "I accidently found a steel container with biohazard materials, inside a plastic bag, without any disinfectants, underneath my working bench." (Def. Ex. C.)  Plaintiff states that he made the report because he was concerned about exposure and contamination.  O'Connor had allegedly told Plaintiff that he was working on a project for Director Christian Whelen with Arthur "Lee" Wong and that the container had only water in it.  O'Connor claims that in preparation for

2

the project, he was practicing drawing samples using distilled water, which did not

contain any bacteria or viruses.  O'Connor states that he disposed of the distilled

water and pippet equipment in a plastic bag placed in a metal container, which was

left at Plaintiff's work station.  Plaintiff allegedly spoke with Arthur Lee Wong,

who told him that they were working with bacteria and several virus specimens.

Plaintiff believes that O'Connor lied when he said he was working only with water

because he found the container under his workbench, pipettors were normally

reused after being sterilized, there were empty culture vials, steel containers with

plastic bags are provided for biohazard materials and not for non-biohazard

materials, and Arthur had told Plaintiff that he had given O'Connor virus

specimens.

       Gail Kunimoto, head of the Medical Microbiology Branch, conducted

an investigation into Plaintiff's incident report.  Kunimoto questioned O'Connor

and Wong.  Wong told Kunimoto that he had told Plaintiff that only water had

been involved.  Kunimoto concluded that no infectious material was in the metal

container or the plastic bag.  Whelen reviewed the investigation and concurred in

the finding.  Plaintiff was informed of the results of the investigation.

       On April 19, 2007, Plaintiff submitted a report about the same

incident to the Safety and Security Committee during a meeting.  The committee

discussed the issue and the previous investigation, and determined that it was really a communication problem.

On May 31, 2007, Defendant received a request by Plaintiff's health care provider, Kaiser Permanente, to test throat swabs taken from Plaintiff for unknown viruses, avian flu, asian flu, and dengue.  The request was based on Plaintiff's report that he had been exposed to viruses at the laboratory.  After consulting with State Epidemiologist Dr. Paul Effler, Defendant determined that testing was not warranted based in part on the fact that Defendant had not reported any symptoms consistent with any strain of influenza or dengue.  Defendant informed Kaiser and recommended that if Kaiser wanted to test the throat swab specimens, that it send them to a private laboratory.

In June 2007, the federal Department of Health and Human Services inspected Defendant's facilities as part of a certification process.  The inspector found that the records kept by Plaintiff indicated that the standards applicable for insuring the quality of bacterial media used to allow the growth of bacteria for laboratory testing were violated.  Plaintiff was counseled on June 16, 2007, regarding the applicable standards and told that failure to comply with procedures may result in him being placed on a formal notice to improve.  Plaintiff was not demoted or disciplined.  Plaintiff's compensation was not decreased.  Plaintiff

claims that other Microbiologist III were also in violation of quality but that
Defendant did not submit their records to the federal inspectors for review.

On June 9, 2007, Plaintiff made a written request to O'Connor that he
talk to George Ulep regarding an alleged failure to prepare plates, which in turn
prevented Plaintiff from culturing a suspected E.coli specimen.  Plaintiff states that
O'Connor did not issue any disciplinary action to Ulep for this failure.

On June 14, 2007, Plaintiff reported that some media, which had been
made by George Ulep, had been contaminated.  Plaintiff was the quality control
person and noticed the contamination on May 21, 2007.  Plaintiff attempted to
identify the cause of the contamination.  Upon investigating Plaintiff's report, Ulep
admitted that he reused nalgene filters and that he should not have done this.  The
incident report prepared by O'Connor, however, criticized Plaintiff for not timely
investigating the problem and, as the quality control person, determining what
went wrong.

On July 23, 2007, Plaintiff made a written request to O'Connor that
the Quality Control Procedure Manual be updated to include written procedures for
certain media and reagents.  Plaintiff claims that this request was ignored.

On July 27, 2009, Plaintiff made a written complaint to O'Connor that
George Ulep failed to prepare plates for culturing specimens and requested that

5

O'Connor discuss the matter with Ulep.  Plaintiff claims that O'Connor ignored his complaint.

On July 30, 2007, O'Connor and co-worker Harry Domen spoke to Plaintiff regarding taking on an assignment of a specific analysis of salmonella bacteria.  Plaintiff would have to receive training for this type of analysis. Defendant states that this was an appropriate duty for Plaintiff's position as a Microbiologist III and was related to other existing duties.  Plaintiff believes that this extra assignment was given to him in retaliation for his incident report. Plaintiff states that this work could take one or two hours each day and should have been distributed evenly among all microbiologists.  Plaintiff made a written objection to the assignment of additional duties.  Kunimoto conducted an investigation into Plaintiff's objection.  Kunimoto concluded that the type of salmonella testing requested was within the scope of responsibilities of a Microbiologist III and the transfer of that duty from Domen to Plaintiff was appropriate.

In August 2007, Plaintiff submitted a claim for workers' compensation benefits based upon finding the steel container under his work bench, which he believed exposed him to unknown viral agents.  Plaintiff's claim was denied.

6

On August 28, 2007, Plaintiff made a written report to O'Connor that certain media was unavailable for his use and that George Domen was responsible. Plaintiff claims that O'Connor did not issue Domen a disciplinary action for this event, like he did with Plaintiff.

On September 23, 2007, Plaintiff filled out the intake questionnaire for filing a charge of discrimination.  On October 9, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Hawaii Civil Rights Commission ("EEOC/HCRC Charge").  Plaintiff alleged race and national origin discrimination and retaliation based upon his March 2007 incident report regarding the steel container.  Plaintiff alleged that he was subjected to disparate treatment by his supervisor O'Connor based upon:  1) a negative employee performance appraisal issued on August 30, 2007; 2) an allegedly unfounded verbal complaint against him by O'Connor made on June 20, 2007; 3) a July 30, 2007 assignment of additional duties of serotyping Salmonella and E.coli bacteria; and 4) an August 2007 exposure to viruses in the lab for which he was denied medical testing.

On February 27, 2008, Plaintiff submitted a letter stating his intent to retire from State service.  Plaintiff retired on April 1, 2008.

7

Plaintiff filed a complaint in this Court on July 30, 2008.  Plaintiff alleges race and national origin discrimination in violation of Title VII and Hawaii Revised Statute Chapter 378-2, retaliation, and intentional infliction of emotional distress ("IIED").

Defendant filed the instant motion on March 25, 2009, seeking summary judgment on all of Plaintiff's claims.  (Doc. # 26.)  Plaintiff filed an opposition on April 27, 2009.  In his opposition, Plaintiff states that his Hawaii Revised Statute section 378-1 and 378-2 claims and his IIED claim have been dismissed via stipulation.  Defendant filed a reply on May 11, 2009.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

8

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

I.   Exhaustion of Administrative Remedies/ Time-Bar

Defendant argues that any incidents occurring before November 15, 2006,[1] are time-barred because Plaintiff failed to file an administrative charge within 300 days of those earlier incidents.  Plaintiff agrees that 300 days prior to filing his HCRC/EEOC Charge is November 15, 2006.  Plaintiff then asserts that actions occurring prior to November 27, 2007,[2] are admissible into evidence as background evidence.

For this Court to have subject matter jurisdiction over an employment discrimination claim brought under Title VII the plaintiff must have first exhausted his administrative remedies by timely filing a charge with the EEOC and obtaining a right-to-sue letter.  See 42 U.S.C. § 2000e-5(e); Greenlaw v. Garrett, 59 F.3d 994, 997 (9th Cir. 1995) ("[t]o litigate a Title VII claim in federal district court,

_____

[1] This Court notes that the parties are basing this date off the date that Plaintiff signed the intake questionnaire, and not on the date that his discrimination charge was actually filed with the agencies.  See Fed. Exp. Corp. v. Holowecki, 128 S. Ct. 1147, 1158 (2008) (holding that an intake questionnaire may be deemed a charge if it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee").  As the parties both agree to run the 300 days from the date of the signing of the intake questionnaire, this Court will use the November 15, 2006 date as the operative filing date.

[2] This Court assumes Plaintiff meant to use the November 15, 2006 date.

11

plaintiff must have exhausted her administrative remedies").  "Although ordinarily the administrative charge must be filed within 180 days of the alleged unlawful employment practice, the deadline is extended to 300 days if the charge is initially filed with a state agency that enforces its own anti-discrimination laws."  EEOC v. Dinuba Med. Clinic, 222 F.3d 580, 585 (9th Cir. 2000); See 42 U.S.C. § 2000e-5(e)(1); Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  "In Hawaii, the HCRC is authorized to grant and seek relief for discriminatory practices."  Hale v. Haw. Publ., Inc., 468 F. Supp. 2d 1210, 1219 (D. Haw. 2006).  "The filing of a charge . . . determines when the Act's time limits and procedural mechanisms commence."  Fed. Exp. Corp., 128 S. Ct. at 1159. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Nat'l R.R. Passenger Corp., 536 U.S. at 113.

Here, Plaintiff filed his EEOC/HCRC Charge on September 23, 2007. All parties agree that 300 days before September 23, 2007, is November 15, 2006. Plaintiff has not argued that the acts listed in the Complaint are not discrete discriminatory acts, and instead are part of a hostile work environment claim. Accordingly, Plaintiff may not rely on any incidents that occurred prior to November 15, 2006, as adverse actions to prove discrimination or retaliation.  See

12

id. at 114 ("While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable.").

II.    Discrimination and Retaliation Claims

Defendant argues that Plaintiff cannot prove his prima facie case of discrimination or retaliation because Plaintiff has not established that he suffered an adverse employment action.  This Court agrees.

In order to establish a Title VII disparate treatment claim and/or retaliation claim, the plaintiff must produce evidence that gives rise to an inference of unlawful discrimination, either through direct evidence of discriminatory or retaliatory intent or through the burden shifting framework set forth in McDonnell Douglas Corp. v. Green.  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003); see Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) (for retaliation).  Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (internal quotation marks omitted) (alteration in original).  Direct evidence "is defined as evidence of conduct or statements by persons involved in the decision-making process that may

13

be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision."  Enlow v. Salem-Keizer Yellow Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) (citation, internal quotation marks, and ellipses omitted).  Plaintiff has not asserted that he has any direct evidence of discriminatory or retaliatory intent.  Accordingly, Plaintiff must proceed under the McDonnell Douglas framework.

Under that framework, the plaintiff must first establish a prima facie case of discrimination or retaliation to go forward on either claims.  Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000); Ray, 217 F.3d at 1240.  "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994) (citation omitted).

For a disparate treatment claim based upon race or national origin discrimination, the plaintiff's prima facie case consists of proving that:  (1) he belongs to a protected class; (2) he was performing his job according to the employer's expectations; (3) he was subject to an adverse employment action; and

14

(4) similarly situated individuals outside his protected class were treated more favorably. <u>Chuang</u>, 225 F.3d at 1123; <u>Godwin</u>, 150 F.3d at 1220.

For a retaliation claim, the plaintiff's prima facie case consists of establishing that: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." <u>Ray</u>, 217 F.3d at 1240; <u>Vasquez</u>, 349 F.3d at 646; <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003).

If the plaintiff meets this burden,

> the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory, [or nonretaliatory]  reason for the challenged action.  If the employer does so, the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

<u>Chuang</u>, 225 F.3d at 1123-24 (internal quotation marks and citation omitted).

> Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor. A plaintiff alleging employment discrimination "need produce very little evidence in order to overcome an employer's motion for summary judgment." . . . "In evaluating motions for summary

15

> judgment in the context of employment discrimination, [the Ninth Circuit] ha[s] emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."

Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (citations omitted).

For a discrimination claim, adverse actions are defined as those that "materially affect the compensation, terms, conditions, or privileges of employment." Chuang, 225 F.3d at 1126; Davis, 520 F.3d at 1089. "Title VII does not limit its reach only to acts that take the form of cognizable employment actions such as discharge, transfer, or demotion." Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002) (quotation marks and citation omitted).

The definition of adverse action for a retaliation claim is broader. An adverse action for purposes of a retaliation claim is defined as an action that "is reasonably likely to deter employees from engaging in protected activity." Ray, 217 F.3d at 1243; Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (a challenged action is materially adverse if "it might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (citation omitted).

Although adverse action is defined broadly, not every employment decision amounts to an adverse employment action. Ray, 217 F.3d at 1240. For example, for a retaliation claim, "normally petty slights, minor annoyances, and simple lack of good manners will not create [a] deterrence" from engaging in protected activity. Burlington N., 548 U.S. at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. To determine whether a particular action is materially adverse, the court must employ an objective standard and consider the context and circumstances of the particular case. Id. at 68-69, 71.

In Ray, the court found that the elimination of the Employee Involvement program, and the flexible start-time policy, the institution of lockdown procedures, reduction of workload, and reduction of pay disproportionately to the reductions faced by other employees, qualified as adverse employment actions. Ray, 217 F.3d at 1243-44. The court reasoned that since the actions "decreased Ray's pay, decreased the amount of time that he had to complete the same amount of work, and decreased his ability to influence workplace policy, . . .[they] were reasonably likely to deter Ray or other employees from complaining about discrimination in the workplace." Id. at 1244.

17

"[A]ssigning more, or more burdensome, work responsibilities, is an adverse employment action." <u>Davis</u>, 520 F.3d at 1089.  Transferring job duties, or actions that negatively affect the employee's compensation have also been found to constitute adverse employment actions.  <u>Fonseca</u>, 374 F.3d at 847; <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir. 1987).  Being excluded from meetings, seminars, and positions that would have made the employee eligible for salary increases, and being given a more burdensome work schedule, if proven, were sufficient to establish adverse employment actions.  <u>Strother</u>, 79 F.3d at 869.  In addition, undeserved performance ratings can constitute an adverse employment action.  <u>Yartzoff</u>, 809 F.2d at 13785.  However, a mediocre performance rating that does not give rise to any further negative employment action does not constitute an adverse employment action.  <u>Kortan v. Cal. Youth Auth.</u>, 217 F.3d 1104, 1112-13 (9th Cir. 2000); <u>Hutchinson</u>, 2004 WL 1753391, at *9 (mere criticism of performance, without more, does not rise to the level of an adverse employment action).

In <u>Kortan</u>, the court found that an undeserved rating on an official evaluation was not an adverse employment action since it was not disseminated, and it was not accompanied by a change in work load or assignments, reduction of salary, denial of a raise, suspension, or termination.  <u>Id.</u> at 1113.  Similarly in

18

Lyons, 307 F.3d at 1118, the Ninth Circuit found that the employer's mediocre performance evaluations of the plaintiff were not adverse employment actions since the plaintiff had not alleged that the evaluations were published, or that they caused the plaintiff to be relieved of responsibilities or saddled with burdensome tasks.  See Rivera v. England, 360 F. Supp. 2d 1104, 1121 (D. Haw. 2005) (a negative evaluation that does not remain in the employee's personnel file is not an adverse employment action).

Here, none of the incidents relied upon by Plaintiff are adverse employment actions with respect to either his discrimination claim or his retaliation claim for those actions that occurred after his incident report.[3]  For example, although purposefully exposing an employee in a laboratory to contagious viruses and bacteria may constitute an adverse employment action, Plaintiff has not created a genuine issue of material fact that he was in fact exposed to viruses or bacteria on purpose.  Instead, the evidence submitted establishes that the steel container under his work bench contained water and did not contain viruses.  Plaintiff has provided only his speculation and belief that the steel container contained infectious material.  This is insufficient to overcome Defendant's evidence to the contrary.  See Arpin v. Santa Clara Valley Transp.

_____

[3] This Court assumes his incident report qualified as protected activity.

19

Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat the County Defendants' summary judgment motion"); Roley v. New World Pictures, Ltd., 19 F.3d 479, 482 (9th Cir. 1994) ("naked allegations and speculation" are insufficient to preclude summary judgment); Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) ("Sweeping conclusory allegations will not suffice to prevent summary judgment."). Moreover, there is no evidence or allegation that Plaintiff ever complained of symptoms from such alleged exposure, or that he had to take sick leave because of the exposure.

The other actions alleged by Plaintiff were criticisms he received, where he claims that others were not similarly criticized.  However, Plaintiff has not shown that the criticisms materially affected his compensation, his status, his work schedule, or any other condition of employment.  Neither has Plaintiff shown that the criticisms were undeserved or would deter a reasonable person from engaging in protected activity.

Plaintiff also argues that the fact that he reported that other employees failed in performing their duties and that his reports were ignored constitutes an adverse employment action.  Plaintiff provides no support for this argument.  It is

difficult for this Court to conceive of how Plaintiff's terms of employment were

negatively affected based upon this argument.

Finally, Plaintiff claims assigning him to do a specific analysis of

Salmonella and E.coli bacteria was an adverse employment action.  Plaintiff,

however, has not provided evidence that this assignment was outside the scope of

his duties or that the assignment resulted in him performing more work.  Plaintiff

provided no evidence that because of this assignment he had to work longer hours,

work more diligently in the hours he was at work to accomplish all tasks assigned,

or that this assignment was more burdensome than other regular assignments.

There is nothing in the record whatsoever that could show that this assignment had

any impact on his schedule or conditions at work, or that it had some type of

negative impact on his employment.

Taking an expansive view of the definition of the term adverse

employment action and construing the facts in the light most favorable to Plaintiff,

Plaintiff has not demonstrated that any of the actions materially affected the terms

or conditions of his employment or would have deterred a reasonable employee

from engaging in protected activity.

Moreover, even if some actions could be considered adverse

employment actions, with respect to his discrimination claim, Plaintiff presented

21

only his speculation with respect to whether other employees were similarly

situated but were not subjected to the same adverse employment actions.  See

Vasquez, 349 F.3d at 641 ("individuals are similarly situated when they have

similar jobs and display similar conduct");  McDonnell Douglas, 411 U.S. at 804

(the misconduct engaged in by the employees must be "of comparable

seriousness").  Thus, Plaintiff's discrimination claim also fails for failing to

provide evidence of the final prong of his prima facie case.  Villiarimo v. Aloha

Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (refusing "to find a 'genuine

issue' where the only evidence presented is 'uncorroborated and self-serving'

testimony") (quoting Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir.

1996)).

For these reasons, Plaintiff's discrimination and retaliation claims fail

and Defendant's motion is GRANTED.

III.   Constructive Discharge

In his opposition Plaintiff alleges for the first time that he was

constructively discharged from employment.  Plaintiff relies upon all of the actions

which this Court has already found to be untimely as support for his constructive

discharge claim.  Plaintiff also argues that although he did not allege constructive

discharge in his EEOC/HCRC Charge or in his Complaint, it was like or reasonably related to the claims he did file.

"The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003) (citing EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994) and Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)).  Generally, the claims raised in district court must have previously been presented to the EEOC. Id. (citing Albano v. Schering-Plough Corp., 912 F.2d 384, 385 (9th Cir. 1990)). The court must, however, also consider claims that were not asserted in the EEOC charge, but are asserted for the first time in the lawsuit, if those claims fell within the scope of the EEOC's actual investigation, or are "like or reasonably related to" the allegations made before the EEOC, such that they would have been included within the scope of an EEOC investigation.  Id. (citing Sosa, 920 F.2d at 1456).   A plaintiff's claims are considered "'reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.'"  Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir, 2002) (citing B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002)).  Factors warranting consideration to determine whether the exhaustion requirement has been satisfied include:  "the alleged basis of the discrimination, dates of

23

discriminatory acts specified within the charge, perpetrators of discrimination named within the charge, and any locations at which discrimination is alleged to have occurred." Id. "The crucial element of a charge of discrimination is the factual statement contained therein." Id.

Where an employee quits or retires they must prove that they were constructively discharged. "Constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000); Knappenberger v. City of Phoenix, -- F.3d --, No. 07-15774, 2009 WL1444557, at *2-3 (9th Cir. May 26, 2009) (holding that "an employee's reasonable decision to retire can amount to an involuntary retirement" but that the employee must still present evidence that "a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions" or evidence that he was coerced to resign) (citation omitted).[4] To prove a constructive discharge claim, "a plaintiff must

---

[4] Unlike the plaintiff in Knappenberger, Plaintiff here is not arguing a theory of coercion.

show there are triable issues of fact as to whether a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." Hardage v. CBS Broad., Inc., 427 F.3d 1177, 1184 (9th Cir. 2005), as amended by, 433 F.3d 672 (9th Cir. 2006); see also Watson v. Nationwide Ins., Co., 823 F.2d 360, 361 (9th Cir. 1987) (a plaintiff must show that their working environment was "so intolerable and discriminatory" that a reasonable employee would be compelled to quit). The plaintiff must show that "the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." Penn. State Police v. Suders, 542 U.S. 129, 134 (2004).

The standard to prove a constructive discharge claim is higher than that required to prove a hostile work environment claim. Brooks, 229 F.3d at 930 ("[w]here a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standard of constructive discharge: conditions so intolerable that a reasonable person would leave the job."). A plaintiff must at least show some aggravating factors that compelled him or her to quit, such as a continuous pattern of discriminatory treatment. Schnidrig v. Columbia Machine, Inc., 80 F.3d 1406, 1412 (9th Cir. 1996).

Here, Plaintiff has provided no evidence that he presented the HCRC or EEOC with the list of incidents set forth in his Complaint that he now asserts are the basis for his constructive discharge claim.  Although Plaintiff checked the continuing violation box on his EEOC/HCRC Charge, he limited the time frame of those violations from June 2007 to August 2007.  Moreover, none of the newly described incidents were listed on Plaintiff's intake questionnaire or the EEOC/HCRC Charge.  Neither has Plaintiff provided any argument or analysis as to why all of the incidents that occurred prior to November 15, 2006, are like or reasonably related to the incidents he actually described in his charge and which are discussed herein, or how the EEOC or HCRC would have known to investigate a hostile work environment or constructive discharge claim based upon the few incidents he discussed in his Charge.

In addition, Plaintiff filed his EEOC/HCRC Charge prior to his retirement.  Plaintiff provided no evidence that he filed another EEOC/HCRC charge or attempted to amend his Charge based upon his retirement, or to allege a hostile work environment or constructive discharge claim.

Furthermore, Plaintiff is represented by counsel, who has represented numerous employees in employment matters.  Plaintiff's counsel has provided no reason for failing to allege a hostile work environment or constructive discharge

26

<br>

claim in the Complaint.  Finally, Plaintiff has not sought to amend his Complaint and the deadline for amending the Complaint and filing dispositive motions has long passed.

Accordingly, Plaintiff's attempt to bring a constructive discharge claim fails.

CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion. Clerk of the Court to enter judgment in favor of Defendant.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 3, 2009.



David Alan Ezra
United States District Judge

Tupua v. State of Hawaii, et al., CV No. 08-00350 DAE/LEK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT